Louis L. Friedman, J.
This is a proceeding under article 78 of the Civil Practice Act, wherein petitioner seeks an order in the nature of mandamus, requiring the respondents, clerks of the County of Kings and of the County Court of Kings County, respectively, to print a record on appeal from defendant’s (petitioner’s) conviction of the crime of murder in the first degree, and, more particularly, to include in said printed record, certain newspaper and magazine articles which were offered hut not received in evidence, being however, marked for identification. The respondents attack the proceeding on various grounds *160 which will be referred to hereinafter. They specifically oppose the application upon the ground that the comptroller of the City of New York will not pay the printer for the printing of this additional matter, i.e., the newspaper and magazine articles. The additional cost, it is estimated, will be $750.
Petitioner is one of several defendants who were convicted in the County Court of Kings County, of the crime of murder in the first degree, and upon the recommendation of the jury, were sentenced on January 25, 1955 to terms of life imprisonment. Petitioner has filed a notice of appeal from said judgment of conviction, and in accordance with the provisions of section 485 of the Code of Criminal Procedure, has called upon the respondents to prepare the judgment roll and to provide for the printing of the record on appeal. Respondents have indicated their willingness to do so, but refuse to print the newspaper and magazine articles already referred to. Their refusal is based only upon the fact that the comptroller has stated that he will not pay for this portion of the printing, and so the printer refuses to do the printing. Were it not for the position taken by the comptroller, respondents would have no objection to printing the articles in question. Petitioner claims that these articles prejudiced the minds of the jury against him, and thereby deprived him of a fair trial. Their exclusion from evidence, says petitioner, is one of the points to be raised on appeal.
Although not a party to the proceeding now before this court, the District Attorney of Kings County (representing respondent in the Appellate Division) joins respondents here in opposing the present application, and for the same reasons. While conceding that the matter excluded from evidence is properly part of the record on appeal, he suggests that the original documents be handed up to the appellate court at the time of argument, rather than be printed. To this procedure petitioner objects, and insists upon his right to have a complete printed record before each of the appellate justices.
On January 17, 1956 the County Judge before whom the murder case was tried, made and entered an order, on the basis of a stipulation signed by the parties to the appeal, which order directed the printing of the objectionable matter. Thus, the matter excluded from evidence was, by said order, made part of such record on appeal. Despite entry of this order, respondents still refuse to print the newspaper and magazine articles already referred to, and it is because of such continued refusal that the present application is now before this court.
*161 In their opposing papers, respondents contend that they are warranted in their noncompliance with the aforesaid order because ‘1 the printer to whom the printing of the record was assigned has refused to print as part of the record the newspaper and magazine clippings referred to after having been in communication with the Comptroller’s office ” (i.e., the office of the comptroller of the City of New York) “ and having been told that the bill for printing this portion of the work would not be recognized and paid for by the City of New York, not being a proper and legal charge.”
This is a most unique position, and one which this court may not sanction. Neither the respondents nor the comptroller of the City of New York have the authority to determine what shall be included in the record on appeal. Theirs is merely a ministerial function. It is the court which must decide, and which has already decided, what is properly part of the record, and the respondents as well as the comptroller of the City of New York, must recognize and respect the order which has been heretofore made.
Respondents rely for their position on the case of People v. Jameison (260 N. Y. 134). That case is not only not authority for respondents’ position, but instead is authority against them. There, the Court of Appeals merely manifested its disapproval of the incurring of needless expense by including in a record on appeal, matters which were foreign to the points sought to be raised. Even though the statements were dicta, albeit judicial dicta, being set forth as a rule of guidance, the rule laid down must, of course, be adhered to (2527 — 7th Ave. Corp. v. Knight, 260 App. Div. 733, 736; Chance v. Guaranty Trust Co. of N. Y., 164 Misc. 346, 350; People ex rel. Metropolitan St. Ry. Co. v. State Bd. of Tax Commrs., 174 N. Y. 417, 447; Dougherty v. Equitable Life Assur. Soc., 266 N. Y. 71, 88).
However, the situation which the Court of Appeals described in the Jameison case {supra) is not present here. As illustrative of what it condemned, the court cited the practice of including in the appeal record, hundreds of pages of stenographic minutes devoted to the examination of talesmen where no challenge to the panel or to individual jurors was involved. As distinguishing such type of needless expense and confusion from matter which should properly be included in the record, the court made the significant comment ,(pp. 136-137): “ Cases may arise where a defendant may desire to review the legality of a ruling as to the qualifications of a juror or the right to additional challenges (People v. Doran, 246 N. Y. 409), or some other question affecting his rights where a more complete record may be required, *162 In such cases an application may be made to the court for an order directing the County Clerk to print such additional parts of the record as may be necessary to present the question fairly to the appellate court, (People v. Priori, 163 N. Y. 99.) ” (Emphasis supplied).
This is precisely the procedure which was followed in the instant case, and the refusal of respondents to comply with the court’s direction to print the additional parts, is without authority in law.
It is not the province of this court to sit in review of the order made by the learned County Judge, even if this court were inclined to question the contents of said order, which it does not. How else could the propriety of the ruling of the trial court, which rejected the evidence, be better reviewed?
Nor does it lie with respondents to take it upon themselves to decide what will or will not be printed, much less in the manner and for the reasons which they indicate. The County Judge, with the concurrence of the parties, has settled this phase of the case. His order explicitly directs respondents to “ have printed as part of the record on appeal in the case of People v. Jack Koslow and Melvin Mittman, Indictments #1917/154, those newspaper and magazine articles submitted by Fred G-. Morritt, Esq., attorney for the defendant Jack Koslow, that are printed in English, and that are dated on or prior to the date the jury was sworn, November 24,1954 ’ ’. Such direction having been made, respondents are under the statutory mandate of section 485 of the Code of Criminal Procedure to comply with the order of the court.
The section further directs, in explicit terms, that the cost of preparing and printing the judgment roll shall be a county charge. In the city of New York, the comptroller of the city is the fiscal officer of each of its five counties, and pays all county charges. The stated objection that the comptroller now or at some future time will refuse to sanction such payment is without merit. The county’s fiscal officer has no discretion to raise such challenge, and will be required to pay for such printing.
The only issue now before this court, is whether petitioner has shown a clear legal right to the relief sought. The court finds that he has. Respondents are merely clerical officers who have no discretion but to perform the ministerial function clearly mandated to them by the statute (Matter of City of New York v. Schoeck, 294 N. Y. 559, 568).
Respondents also argue that petitioner should be relegated to the remedy of seeking a contempt citation in the County Court. Even though petitioner may have such other remedy, *163 he is not thereby precluded from invoking the relief which he seeks here (Matter of Leonard v. Horton, 278 App. Div. 62, 64).
Respondents’ answer also raises some technical objections which will be disposed of briefly. They allege that the relief here sought may not be accorded where the determination was made in a criminal matter (Civ. Prac. Act, § 1285, subd. 2). But the refusal of the respondents to perform a duty imposed upon them by law, was merely incidental to a criminal matter, and the relief here sought is not to review any determination made therein. As stated in Matter of Bernoff v. Amoroso (188 Misc. 845, 846): “If petitioner be correct in his contention, he is seeking merely to compel the performance of a clerical or ministerial act affecting his jail record and not to review a determination which has been made in a criminal case. Section 1285 of the Civil Practice Act has not deprived the court, in an article 78 proceeding, of the power to compel the performance of an act which, although it concerns a criminal case, does not constitute it a review of a determination therein [authorities cited].”
Respondents also urge that petitioner may not proceed under article 78 of the Civil Practice Act because he did not seek such relief ‘ ‘ within four months after the determination to be reviewed becomes final and binding ” (Civ. Prac. Act, § 1286, erroneously pleaded in the answer as § 1289).
The requirement of the statute that respondents prepare the record, is a continuing one which they may not evade in this manner. (See Matter of Beggs v. Kern, 172 Misc. 556, 566, affd. 258 App. Div. 1049, mod. on another point 284 N. Y. 504.) It is well established however that the limitations period prescribed in section 1286, does not commence to run until an official, called upon to perform a duty prescribed by law, has, after demand, finally and unequivocally refused so to do. (See Matter of Williams v. Morton, 297 N. Y. 328, 334; Matter of Barbarita v. Board of Estimate, 62 N. Y. S. 2d 424, 426, 427.) It is amply demonstrated in the papers before this court, and the court finds, that there was here no final and definite “ refusal ” by respondents, following petitioner’s demand, until a time well within a four-month period preceding the institution of this proceeding. Negotiations between the parties have been continuous, almost to the time that the present application was made, indicating that respondents had never definitely and finally taken their stand in this matter, until they were called upon to take a definite position in response to the moving papers in this proceeding.
*164 The homicide for which this petitioner was tried and convicted, was a heinous one, and because of its nature, received wide publicity. Commendably, the police and District Attorney spared no effort or expense to track down and eventually secure the arrest and conviction of those who were charged with the crime. At no time during the proceedings taken to apprehend and convict the accused, was any question ever raised as to the great public expense involved, and that is as it should be. But our system of jurisprudence, and the Constitution of the United States, accord to every person charged with crime, the right to a complete defense. Where an indigent person is charged with the crime of murder in the first degree, the community, while making public expenditures on the one hand for the prosecution of the accused, also expends the necessary funds to permit the defendant to properly prepare and present his defense. It is rather peculiar therefore that, in this instance, this relatively small charge of $750 should have been objected to by the comptroller, and should have become the subject of so much legal acrimony.
The Constitution of the United States guarantees civil liberties and equal justice to all of our citizens. Equal justice means justice to the poor as well as to the wealthy, and no person charged with crime, no matter how heinous his dereliction, and no matter how obviously guilty he may appear, may be deprived of any of the protections which the Constitution and our law so properly give him. Were the petitioner here one who had the financial ability to himself pay for the printing of the record on appeal, the question now presented would never have arisen. It is because the petitioner is indigent that the county has, by law, been called upon to pay the printing charges, and having been so called upon, now refuses to make the necessary payment.
Petitioner’s application is therefore granted, and the respondents are directed to comply with the order of the County Judge hereinbefore referred to, and to include the newspaper and magazine articles previously referred to, as part of the printed record on appeal. Since such printing is a county charge (Code Grim. Pro., § 485), the fiscal officer of the County of Kings, to wit, the comptroller of the City of New York, should be required to pay therefor. In the event that such officer refuses to make such payment after completion of said printing, an appropriate application may be made to this court to compel such payment. Settle order on notice.